**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

DAMON ANTHONY DASH    Case No. 8:25-bk-06436-RCT

Debtor.    Chapter 7

_________________________________________/

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES AND A STALKING HORSE AGREEMENT, (II) SCHEDULING AN AUCTION AND SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE, AND (IV) AUTHORIZING THE SALE OF THE DEBTOR'S LIFE STORY RIGHTS AND RELATED INTELLECTUAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**

Traci K. Stevenson, the duly-appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Damon Anthony Dash (the "Debtor"), by and through undersigned counsel, and pursuant to sections 105(a), 363(b), 363(f), and 363(m) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure, and Local Rule 6004-1, hereby files this Motion for entry of an order (i) approving bidding procedures and a stalking horse purchase agreement, (ii) scheduling an auction and a sale hearing, (iii) approving the form and manner of notice thereof, and (iv) authorizing the sale of the Property (defined below) free and clear of all liens, claims, encumbrances, and other interests (the "Motion"). In support of the Motion, the Trustee states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure, and Local Rule 6004-1.

## II. BACKGROUND

3. On September 4, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, commencing the above-captioned case (the "Case").

4. Traci K. Stevenson was appointed interim trustee pursuant to 11 U.S.C. § 701(a) and continues to serve as the permanent Chapter 7 Trustee of the Estate pursuant to 11 U.S.C. § 702(d).

5. The meeting of creditors held pursuant to 11 U.S.C. § 341(a) commenced on October 8, 2025, and concluded on October 22, 2025. This is an asset case, and the Clerk has set January 10, 2026, as the deadline for filing proof of claims.

6. The Debtor is a well-known figure in the entertainment and music industries, having co-founded Roc-A-Fella Records, Inc. with Shawn "Jay-Z" Carter and Kareem "Biggs" Burke, and having otherwise maintained a decades-long public persona and body of work spanning film, music, television, and social media.

## III. THE PROPERTY OF THE ESTATE TO BE SOLD

7. The Trustee seeks to sell the Debtor's "Life Rights," as defined in the Stalking Horse Agreement (attached hereto as Exhibit "A" and defined below). These Life Rights (also defined herein as "Property") are defined in the Stalking Horse Agreement as the Debtor's "life story together with Dash's voice, image, likeness, biography, and identifying characteristics, and the right to portray all the incidents, events, and

situations of Seller's life story and all the elements thereof including, without limitation, any facts, themes, plots, characters, settings, materials, titles and stories contained therein." The Life Rights include the exclusive, worldwide rights, in perpetuity, to commercialize the Debtor's life story, including all incidents, events, and situations occurring from the Debtor's childhood through the Petition Date, together with the Debtor's name, voice, image, likeness, biography, and other identifying characteristics, and the right to portray the same in motion pictures, documentaries, live stage performances, and any other form of performance or audiovisual work; any transmission of video and/or audio content by any means or technology now existing or hereafter developed, including without limitation broadcast, cable, satellite, theatrical, AVOD, SVOD, and streaming distribution; all forms of online and social media distribution (including Facebook, YouTube, Instagram, and X); mobile and interactive distribution; literary and publication rights, including electronic books, audio books, and online publication; and merchandise tie-in rights..

8. The Trustee is further informed and believes that the Debtor possesses substantial archival material relating to his life and career -- including, upon information and belief, over 100 hours of video content, photographs, and memorabilia spanning approximately 1990 through 2025 -- as well as an unreleased, in-development documentary/film project publicly referred to as *"The Roc-A-Fella Movie."* This material and any associated rights constitute property of the Estate to the extent held or controlled by the Debtor and are included within the Life Rights to be sold.

9. A debtor is required to disclose intellectual property and other intangible personal property in the Schedules of Assets and Liabilities and Statement of Financial Affairs.

The Trustee's investigation indicates that the life-story and related rights described above were not separately disclosed or scheduled by the Debtor, notwithstanding their evident value in light of the Debtor's public profile and his historical association with Roc-A-Fella Records and Mr. Carter.

10. Courts in this District have recognized that a debtor's life-story rights constitute property of the estate that a chapter 7 trustee may market and sell for the benefit of creditors. See In re Casey Marie Anthony, Case No. 8:13-bk-00922-RCT (Bankr. M.D. Fla.), Doc. No. 122.

11. The Trustee notes, by way of comparison, that the monetization of an individual's name, image, and likeness has become a well-established and actively regulated commercial market, as evidenced by the framework now governing collegiate athlete "NIL" (name, image, and likeness) agreements. That market confirms that rights of this character -- a person's name, image, likeness, persona, and life narrative -- are recognized as commercially valuable, transferable property, further supporting the Trustee's business judgment that the Property is a marketable Estate asset appropriate for sale under section 363.

## IV. MARKETING EFFORTS AND THE PROPOSED STALKING HORSE BID

12. Given the significant public interest in the Debtor and the Property, the Trustee anticipated -- and has confirmed through her marketing efforts -- that multiple parties would be interested in acquiring the Property.

14. The Trustee has received written offer from Everlasting Films, LLC ("Everlasting" or the "Stalking Horse Bidder"), memorialized in a Life Story Agreement in the amount of $37,000.00, payable in full, in cash, upon full execution of the Stalking Horse

Agreement at closing (the "Stalking Horse Agreement," a true and correct copy of which is attached hereto as Exhibit A).

15. In the exercise of her sound business judgment, and in light of the marketing efforts undertaken to date, the Trustee has determined that the Everlasting offer represents the highest and best offer currently available for the Property and proposes that it serve as the stalking horse bid, subject to higher and better offers solicited through the bidding procedures described below.

16. The Stalking Horse Agreement provides, among other things, that: (a) the Property is sold on an *"as is, where is"* basis, without any representations or warranties of any kind, express or implied, other than the Trustee's limited representation that she has the right and authority to sell the Property; (b) the sale is subject to Bankruptcy Court approval and to higher and better bids; (c) the sale is to be free and clear of all liens, claims, encumbrances, and other interests to the maximum extent permitted under 11 U.S.C. § 363(f); and (d) in the event Everlasting is outbid and an alternative transaction is consummated, Everlasting shall be entitled to expense reimbursement of $3,700.00 (approximately 10% of the Stalking Horse Bid), payable solely from the proceeds of the alternative transaction, in recognition of the time and expense Everlasting incurred in negotiating the Stalking Horse Agreement and establishing a floor value for the Property (the "Break-Up Fee").

17. The Trustee submits that the Break-Up Fee is reasonable in amount, was a material inducement for Everlasting to submit a bid and subject itself to being outbid, and will benefit the Estate by establishing a floor bid and encouraging competitive bidding.

## V. THE PROPOSED BIDDING PROCEDURES

18. To maximize the value obtained for the Property for the benefit of the Estate and its creditors, the Trustee proposes the following bidding and auction procedures (the "Bidding Procedures"), which the Trustee believes are fair, reasonable, and designed to encourage competitive bidding:

a. **Stalking Horse Bid.** The Stalking Horse Agreement with Everlasting Films, LLC, for $37,000.00, on the terms set forth in Exhibit A, shall serve as the stalking horse bid and establish the floor for the sale of the Property.

b. **Qualified Bid Requirements.** To be considered a "Qualified Bid," any competing bid must, on or before the Bid Deadline: (i) be in writing and delivered to Trustee's counsel; (ii) be on terms substantially similar to, and on the whole no less favorable to the Estate than, the Stalking Horse Agreement (or be accompanied by a marked copy of the Stalking Horse Agreement reflecting any proposed changes); (iii) not be contingent upon financing, further due diligence, or any similar contingency; (iv) be accompanied by a good-faith deposit equal to ten percent (10%) of the proposed purchase price, held in trust by Trustee's counsel; (v) be accompanied by written evidence, reasonably satisfactory to the Trustee, of the bidder's financial ability to close; and (vi) state that the bid, and the obligation to close, is irrevocable through the earlier of the closing or selection of a different Successful Bidder.

c. **Minimum Initial Overbid.** Any initial competing bid must equal or exceed $47,000.00 -- i.e., the $37,000.00 Stalking Horse Bid plus a minimum initial overbid increment of $10,000.00.

d. **Bid Deadline.** All Qualified Bids must be received by Trustee's counsel no later than 4:00 p.m. (Eastern Time) on _____________, 2026, which shall be no fewer than twenty-one (21) days after service of this Motion and notice of the Bidding Procedures (the "Bid Deadline").

e. **No Qualified Bids.** If the Trustee does not receive any Qualified Bid by the Bid Deadline, the Trustee will report to the Court that no Qualified Bids were received and will request that the Court approve the sale of the Property to Everlasting on the terms of the Stalking Horse Agreement at the Sale Hearing, without the need for an auction.

f. **Auction.** If the Trustee receives one or more timely Qualified Bids, the Trustee will conduct an auction (the "Auction") on _____________, 2026, at __________ a.m./p.m., at a location (or via remote videoconference) to be designated by the Trustee and noticed to all Qualified Bidders and parties in interest. Only Qualified Bidders (including Everlasting, which shall be deemed a Qualified Bidder without the need for a further deposit) may participate. Bidding at the Auction shall open at the highest Qualified Bid received and shall proceed in minimum increments of not less than $10,000.00.

g. **Successful Bid and Back-Up Bid.** At the conclusion of the Auction, the Trustee, in the exercise of her business judgment shall identify the highest or otherwise best bid as the "Successful Bid" and the next-highest or otherwise next-best bid as the "Back-Up Bid." In determining highest and best, the Trustee may consider, among other things, timing of closing, financial wherewithal of the bidder, and certainty of consummation. The Back-Up

Bidder's bid shall remain open and irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, or (ii) sixty (60) days after entry of the Sale Order.

h. **Sale Hearing.** The Trustee will seek approval of the Successful Bid (or, if no Qualified Bids are received, the Stalking Horse Agreement) at a hearing before this Court on _____________, 2026, at __________ a.m./p.m. (the "Sale Hearing"), or at such other date and time as the Court may set.

i. **Closing.** The Successful Bidder shall close within ten (10) days after entry of an order (in reasonably acceptable form to the Successful Bidder) approving the sale (the "Sale Order"). If the Successful Bidder fails to timely close, its deposit shall be forfeited to the Estate, and the Trustee may proceed to close with the Back-Up Bidder within ten (10) days thereafter, without further order of the Court.

j. **Return of Deposits.** Promptly after entry of the Sale Order, the Trustee shall return all good-faith deposits to unsuccessful bidders, other than the deposit of the Back-Up Bidder, which shall be held pending closing.

k. **As Is, Where Is; No Warranties.** The Property shall be sold "as is, where is," with all faults, and without any representations or warranties of any kind, express or implied, of any party, including as to title, condition, merchantability, or fitness for a particular purpose, other than the Trustee's limited representation and warranty as to her authority to sell the Property as fiduciary for the Estate.

l. **Free and Clear.** The Property shall be sold free and clear of all liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(f), with any such liens, claims, encumbrances, and interests to attach to the net sale proceeds with the same validity and priority as existed immediately prior to the sale.

m. **Good-Faith Purchaser.** The Trustee requests that the Successful Bidder be afforded the protections of a good-faith purchaser under 11 U.S.C. § 363(m).

n. **Break-Up Fee.** If Everlasting is not the Successful Bidder, Everlasting shall be entitled to payment of the $3,500.00 Break-Up Fee from the proceeds of the alternative transaction at closing without further order of the Bankruptcy Court, as and to the extent set forth in the Stalking Horse Agreement.

## VI. NOTICE

19. The Trustee will serve this Motion and notice of the Bidding Procedures, the Bid Deadline, the Auction, and the Sale Hearing on the Debtor, all creditors and parties who have requested notice, the Office of the United States Trustee, and all other parties in interest, in accordance with Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure and the applicable Local Rules, and submits that such notice is good and sufficient and no other or further notice need be given.

## VII. BASIS FOR RELIEF

20. Section 363(b)(1) of the Bankruptcy Code authorizes a trustee to sell property of the estate outside the ordinary course of business upon a showing of a sound business justification. The Trustee's determination to sell the Property, and to do so pursuant to competitive bidding procedures anchored by the Stalking Horse Agreement, reflects

a valid exercise of business judgment intended to maximize value for the Estate and its creditors.

21. The establishment of court-approved bidding procedures, including a stalking horse bid, a minimum overbid increment, qualified-bidder requirements, and a reasonable break-up fee, is a well-established and customary practice in chapter 7 asset sales, and is necessary and appropriate here to ensure an orderly, transparent, and value-maximizing sale process.

22. The Trustee is informed and believes that the Property is unencumbered by any liens. The Trustee believes that a sale free and clear of any purported liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(f) is therefore appropriate, and if any such interests exist (including liens of which the Trustee is not aware), they shall solely attach to the sale proceeds.

23. Given the arm's-length, good-faith negotiation of the Stalking Horse Agreement and the Bidding Procedures, the Trustee requests that any purchaser who acquires the Property pursuant to this Motion be afforded the good-faith purchaser protections of 11 U.S.C. § 363(m).

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order: (i) approving the Bidding Procedures described herein; (ii) approving the Stalking Horse Agreement with Everlasting Films, LLC and the Break-Up Fee provided for therein; (iii) scheduling the Bid Deadline, the Auction (if necessary), and the Sale Hearing; (iv) approving the form and manner of notice of the foregoing; (v) authorizing the Trustee to sell the Property to the Successful Bidder free and clear of all liens, claims, encumbrances, and other interests

pursuant to 11 U.S.C. § 363(f); (vi) granting the Successful Bidder the protections of 11 U.S.C. § 363(m); and (vii) granting such other and further relief as the Court deems just and proper.

Dated: August 6, 2026

Respectfully submitted,

/s/ Katelyn M. Vinson, Esquire
Katelyn M. Vinson, Esq.
FBN: 122774
LeavenLaw
3900 1st Street North, Suite 100
Saint Petersburg, FL 33703
727-327-3328

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 6, 2026, a true and correct copy of the foregoing Motion was served via the Court's CM/ECF electronic filing system on all parties registered to receive electronic notice in this Case, and by U.S. Mail, postage prepaid, on the Debtor Damon Dash at 6039 Cypress Gardens Blvd. #620 Winter Haven, FL 33884, and to the entire Mailing Matrix.

/s/ Katelyn M. Vinson_______
Katelyn M. Vinson, Esq.