# LIFE STORY AGREEMENT

**THIS LIFE STORY AGREEMENT** (the "Agreement"), dated this __ day of _________, 20____ (the "Effective Date"), is made (subject to Bankruptcy Court Approval, as defined below) by and between Traci K. Stevenson, in her capacity as duly-appointed Chapter 7 Trustee for the Estate of Damon Anthony Dash ("Seller"), with an address of ______________________ ______, on the one hand, and Everlasting Films, LLC (the "Buyer"), with an address of _ ____________, on the other hand. Each of Seller and Buyer shall be referred to herein as a "Party" and collectively as the "Parties."

WHEREAS, on September 4, 2025, Damon Anthony Dash ("Dash") commenced a voluntary case (the "Bankruptcy Case") under chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court");

WHEREAS, Traci K. Stevenson was appointed trustee of the chapter 7 estate of Dash and is authorized under 11 U.S.C. §§ 363, 541, and 704 to undertake to sell property of such estate, including the Life Story (as defined below) of Dash;

WHEREAS, the Seller in its business judgment believes a sale of the Life Story to be in the best interest of Dash's estate, creditors, and other stakeholders;

WHEREAS, Buyer desires to acquire the Life Story on the terms and conditions contained in this Agreement in accordance with 11 U.S.C. §§ 105 and 363 of the Bankruptcy Code subject to higher and better bids and entry of the Sale Order (as defined below) free and clear of all interests in such property to the maximum extent permitted under 11 U.S.C. § 363(f);

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth herein, it is hereby agreed between the Parties as follows:

1. ***The Life Story.*** The "Life Story," for purposes of its definition and scope, means Dash's life story together with Dash's voice, image, likeness, biography, and identifying characteristics, and the right to portray all the incidents, events, and situations of Seller's life story and all the elements thereof including, without limitation, any facts, themes, plots, characters, settings, materials, titles and stories contained therein (collectively, the "Life Story"), that have occurred at any time through the date hereof (the "Life Story Narrative Period").

2. ***Grant of Rights.*** Subject to entry of the Sale Order and upon payment of the Purchase Price by Buyer to Seller, Seller hereby sells, bargains, grants, conveys, transfers, sets over, and assigns irrevocably to Buyer, exclusively for the duration of the Exclusivity Period defined below, and in perpetuity throughout the universe, all rights, title and interest (including copyright and any extension thereof), present and future, of whatever kind or nature in any and all media now known or hereafter devised in and to the Life Story (the "Rights") for the purpose of the making of a documentary film or written work (the "Project"). The Rights will include the following exclusive rights solely in connection with the Project: (i) any and all rights of any kind, nature and description (whether or not such rights are now known, recognized or contemplated) throughout the universe, in and to the Life Story and in and to the copyright therein, and all renewals and extensions of copyright;

(ii) Project-based audio visual rights, audio rights, prequel, sequel, remake, derivative, and series rights, theatrical and non-theatrical rights, musical and stage rights, public performing rights, music publishing, merchandising rights, interactive media rights, on-line programming rights, mechanical reproduction and distribution rights, recording and reproduction rights, publication rights, radio rights, standard and non-standard television and other broadcasting and transmitting rights, and any so-called "Rental and Lending Rights" pursuant to any European Union ("EU") directives and/or enabling or implementing legislation, laws or regulations enacted by the member nations of the EU, in and to the Life Story; and (iii) any and all so-called "new media" and all other rights now known or hereafter devised, including without limitation all so-called "allied" and "ancillary" rights, in perpetuity, in any and all media and languages in and to the Project. For clarity, nothing contained herein shall prevent Seller from entering into another agreement with regard to Seller's Life Story and all rights thereto with another party after the earlier of five (5) years after the commercial release of the Project or fifty (50) years after the Effective Date (the "Exclusivity Period"), on which earlier date the exclusivity given above shall terminate.

3. ***Litigation***. Buyer is advised and informed that Dash has been a party in various lawsuits (as both a plaintiff and a defendant) and in the future may be a party in additional lawsuits. To the extent any future litigation relates to matters that occurred during the Life Story Narrative Period, the parties agree that such matters are Life Story material governed by this Agreement.

4. ***Best Efforts and Good Faith***. Buyer represents and warrants that it intends in good faith to explore and give genuine consideration to developing the Project for actual release, and Buyer will use its commercially reasonable best efforts to do so. Without limiting the foregoing, Buyer affirms, represents and warrants that this Agreement is not intended to be, nor does Buyer have any direct or indirect intentions, of purchasing the Life Story to sequester it from public attention or otherwise to function as a "catch-and-kill" to prevent the further disclosure of events comprising the Life Story.

5. ***The Purchase Price.*** The "Purchase Price" shall be an amount equal to Thirty-Seven Thousand Dollars ($37,000.00) (the "Purchase Price") which shall be payable upon full execution of this Agreement.

6. ***Warranties and Representations***. Seller hereby represents and warrants that Seller has full right and power to make and perform this Agreement and to sell, assign, and convey all Dash's rights in and to the Life Story.

7. ***Release***. Seller understands that any exploitation of the Rights may contain dialogue, incidents, characters or written or visual material that may or may not be based on or suggested by actual events in the Life Story and Seller agrees that non-disparaging dramatic license may be taken in connection with the Life Story. Seller agrees that Buyer may dramatize the Life Story and add to, subtract from and change characters, incidents, situations and events constituting the Life Story for purposes of non-disparaging dramatization. Seller acknowledges and agrees that Seller and Dash will not in the future bring, institute or assert any claim, demand or action against Buyer or its affiliates and

successor and assigns, on the grounds that any exercise of the Rights or any other rights granted hereunder violates Seller's right of privacy, publicity and/or similar rights; and Seller and Dash hereby forever release Buyer and its affiliates and successor and assigns from any and all claims, demands or causes of action that Seller may now have or may hereafter have for invasion of privacy or right of publicity, infringement of copyright or violation of any other right arising out of or relating to this Agreement, the Life Story or the Rights or based upon any failure or omission to make use of the Life Rights or the Rights.

8. ***Assignments.*** Buyer may assign this Agreement (including, without limitation, any or all of its rights and obligations hereunder) to any person or entity, which thereupon assumes and becomes jointly and severally obligated to Seller with regard to all liabilities, duties and obligations hereunder (including, without limitation, the Best Efforts and Good Faith obligations of ¶ 4).

***9. Bankruptcy Matters.***

a. Buyer and Seller each acknowledge and agree that this Agreement and the transactions contemplated herein are subject to Seller's right and ability to consider higher and better competing bids for the Life Story. To the extent any such competing bids are received by the Seller, Seller shall conduct an auction of the Life Story to determine the highest or best bid for the Life Story. Seller shall be deemed a qualified bidder to participate in any such auction.

b. Buyer and Seller each acknowledge and agree that this Agreement and the transactions contemplated herein are subject in all respects to the entry of a final non-appealable order (the "Sale Order") in form and substance reasonably acceptable to Buyer ("Bankruptcy Court Approval"). The Sale Order shall provide, among other things, that (i) this Agreement is valid and enforceable; (ii) this Agreement and the transactions and agreements contemplated herein are approved and the Seller is authorized and directed to consummate all such transactions and agreements; (iii) upon the closing and consummation of the transactions described in this Agreement, the Life Story shall be sold to Buyer free and clear of all liens, claims, encumbrances, and other interests to the maximum extent permitted under 11 U.S.C. § 363.

c. Further, if an auction is conducted and Buyer is not the winning bidder for the Life Story because Seller selects another bid as the highest or best offer (such winning bidder, the "Successful Bidder"), Buyer understands that, in accordance with and subject to any bidding procedures order, it shall be required to serve as the back-up bidder if Buyer is the next highest or otherwise next best bidder for the Life Story at the auction (the party that is the next highest or otherwise next best bidder at the auction after the Successful Bidder, the "Back-Up Bidder"). If Buyer is the Back-Up Bidder, Buyer shall be required to keep its bid to purchase the Life Story on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer in the auction) open and irrevocable until sixty (60) days following the selection of the Successful Bidder. Following the auction, if the Successful

Bidder fails to consummate the Successful Bidder's bid for any reason whatsoever, then Buyer, if Buyer is still the Back-Up Bidder, will be deemed to have the new prevailing bid, and Seller may seek authority to consummate this Agreement on the terms and conditions set forth herein (as the same may be improved upon by Buyer in the auction) with Buyer as the Back-Up Bidder.

d. In consideration for Buyer having expended time and expense in connection with this Agreement, the negotiation of this Agreement and the identification and quantification of the assets to be sold under this Agreement, upon the consummation of any transfer of the Life Story to any entity other than Buyer (an "Alternative Transaction"), Buyer shall be entitled to payment of the sum of $3,700.00 as expense reimbursement (the "Expense Reimbursement"), which shall be paid in cash, by wire transfer of immediately available funds solely from the proceeds of such Alternative Transaction to an account designated in writing by Buyer to Seller. The obligation to pay the Expense Reimbursement shall survive the termination of this Agreement; *provided*, *however*, that Buyer shall not be entitled to receive the Expense Reimbursement if Buyer has breached or defaulted under this Agreement and such breach or default is not cured as permitted under this Agreement. The Parties acknowledge and agree that payment of the Expense Reimbursement is an integral part of this Agreement and, in the absence of Seller's agreement to pay the Expense Reimbursement on the terms set forth herein, Buyer would not have entered into this Agreement. Upon the consummation of any Alternative Transaction, Seller will pay the Expense Reimbursement as provided for herein, and the Parties shall be released from all further obligations hereunder.

10. ***Remedies.*** Seller acknowledges and agrees that, except as may be authorized by the Bankruptcy Court in an order approving an Alternative Transaction, in no event shall Seller terminate or rescind this Agreement or seek or be entitled to enjoin or restrain the Rights and the development, production, exhibition, distribution, advertising, marketing or other exploitation of any projects or productions based on the Life Story. Seller hereby acknowledges and agrees that in the event of a breach or threatened breach of this Agreement or any part hereof by Seller, in addition to any other damages Buyer is entitled to in connection with such breach, Buyer shall be entitled to seek injunctive and other equitable relief against Seller and/or Dash to end or prevent such breach and to secure enforcement of this Agreement through a court order or through the arbitration process outlined below, provided, that, for the avoidance of doubt, any resort to such equitable relief shall not be construed as a waiver of any other rights or remedies which Buyer may have for damages or otherwise.

11. ***Confidentiality.*** Subject to ¶¶ 2 and 3 above and except as necessary to obtain entry of the Sale Order, Seller acknowledges and agrees that Seller will not divulge any elements of the Life Story or any project based on the Life Story to any third party.

12. ***Termination.*** This Agreement may be terminated at any time prior to closing by written notice to the applicable Party as follows:

a. by mutual written agreement of Buyer and Seller;

b. by either Buyer or Seller if the Agreement is disapproved by the Bankruptcy Court;

c. by either Buyer or Seller if, prior to closing, the Sale Order, after being entered by the Bankruptcy Court, is subsequently reversed, revoked, or voided by an order of a court of competent jurisdiction;

d. by Buyer upon consummation of an Alternative Transaction, including following an auction if Buyer is not the Successful Bidder or the Back-Up Bidder; or sixty (60) days have expired since Buyer was named the Back-Up Bidder; provided, in each case, that Buyer has not breached or defaulted under this Agreement and such breach or default is not cured as permitted under this Agreement;

e. by Buyer if the Bankruptcy Court enters an Order dismissing the Bankruptcy Case.

If this Agreement is terminated, each of the Parties shall bear its own costs incurred in connection with the transactions contemplated by this Agreement; provided that Buyer shall be entitled to the Expense Reimbursement solely upon the consummation of an Alternative Transaction, as expressly provided herein.

13. ***Governing Law / Arbitration.*** The Bankruptcy Court shall have exclusive jurisdiction over any dispute or matter arising out of or relating to the bidding procedures and sale process contemplated herein, through the ultimate closing and consummation of the sale transaction described in this Agreement, to the fullest extent permitted by law. This Agreement shall be interpreted in accordance with the laws of the State of New York, applicable to agreements executed and to be wholly performed therein. Except with respect to injunctive or equitable relief being sought by Buyer through a court order pursuant to Paragraph 7 above, the Parties and Dash shall submit all post-closing questions, disputes, controversies or claims between them to binding arbitration. BUYER AND SELLER WAIVE THEIR RIGHTS TO A COURT OR JURY TRIAL. This agreement to arbitrate applies to, but is not limited to, all disputes regarding the construction or application of this Agreement, all claims arising under federal, state, or local statutory or common law, including: claims of breach of promise(s), breach of contract or breach of the covenant of good faith and fair dealing, tort claims, and any other claims of illegality or breach of any right which Buyer or Seller or Dash might hold with respect to the other whether under this Agreement or otherwise. The arbitration shall be administered by JAMS in accordance with its rules and procedures. The arbitration shall take place in New York, NY before a single neutral arbitrator from the panel of JAMS. The arbitrator shall be a retired state or federal judge or an attorney with at least ten (10) years of entertainment experience. The Rules of Evidence, including the rules relating to hearsay, will apply to the arbitration. The parties shall have the right to take depositions and to conduct all other discovery available in civil actions. The arbitrator shall issue a written decision and award including the essential findings and conclusions on which the award is based. The opinion and award will decide all issues submitted and shall be final and binding to the fullest extent permitted by law and will be enforceable by any court having jurisdiction. To the extent allowed by New York law, the arbitrator shall be required to follow all applicable substantive law. The arbitrator shall grant any legally meritorious motion to dismiss or motion for summary judgment presented by any party. It is understood and agreed that the prevailing party in

such arbitration and/or confirmation proceeding shall be entitled to recover its reasonable outside attorney's fees and expenses. Except as otherwise limited or prohibited by this Agreement, the arbitrator shall be permitted to award those remedies, including, without limitation, attorney's fees, in law or equity, which are requested by the parties and which the arbitrator determines to be supported by credible and relevant evidence presented. The party who prevails in any arbitration may seek to have the arbitrator's award confirmed as a judgment of the New York County Supreme Court in New York, NY and/or the United States District Court for the Southern District of New York or other court of competent jurisdiction. The JAMS arbitration may be subject to the JAMS appeals procedure.

14. ***Miscellaneous.*** This Agreement constitutes the entire understanding of the Parties and may not be altered, amended, modified, or canceled except by a written agreement signed by both Parties. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute one and the same instrument, respectively. Executed copies of the signature pages of this Agreement may be transmitted electronically in either TIFF or PDF format and shall be treated as originals, fully binding and with full legal force and effect, and the Parties waive any rights they may have to object to such treatment. All approvals hereunder shall be in writing (email to suffice).

**IN WITNESS HEREOF**, the Parties hereto have set their hand as of the date first herein set forth.

**AGREED TO AND ACCEPTED BY:**

| **Everlasting Films, LLC** | **Traci K. Stevenson, as Chapter 7 Trustee of the Estate of Damon Anthony Dash** |
|---|---|
| By: ____________________ | By: ____________________ |
| Name: ____________________ | Name: ____________________ |
| Title: ____________________ | Title: ____________________ |