ORDERED.

**Dated: November 19, 2026**

Roberta A. Colton
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: Case No. 8:25-bk-06436-RCT

DAMON ANTHONY DASH Chapter 7

Debtor.
_____________________________/

**AMENDED ORDER (I) GRANTING TRUSTEE'S MOTION AND AUTHORIZING THE SALE OF THE DEBTOR'S LIFE STORY RIGHTS AND RELATED INTELLECTUAL PROPERTY TO EVERLASTING FILMS, LLC FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, (II) SUSTAINING IN PART AND OVERRULING IN PART THE DEBTOR'S OBJECTION, AND (III) DIRECTING TURNOVER OF ARCHIVAL MATERIALS**

THIS CASE came on for hearing on October 27, 2026, at 10:00 a.m. (the "**Sale Hearing**") on the *Trustee's Motion for Entry of an Order (I) Approving Bidding Procedures and a Stalking Horse Agreement, (II) Scheduling an Auction and Sale Hearing, (III) Approving the Form and* Manner *of Notice, and (IV) Authorizing the Sale of the Debtor's Life Story Rights and Related Intellectual Property Free and Clear of Liens, Claims, and Interests* (Doc. No. 39) (the "**Motion**"), filed by Traci K. Stevenson, the Chapter 7 Trustee (the "**Trustee**"), and the *Debtor's Objection to*

*Sale of Life Story Rights and Related Intellectual Property* (Doc. No. 55) (the "**Objection**"), filed by the Debtor, Damon Anthony Dash (the "**Debtor**") and on November 19, 2026, at 1:15 p.m., on the *Joint Emergency Motion for Clarification of Order (I) Granting Trustee's Motion and Authorizing the Sale of the Debtor's Life Story Rights and Related Intellectual Property to Everlasting Films, LLC Free and Clear of Liens, Claims, and Interests, (II) Sustaining in Part and Overruling in Part the Debtor's Objection, and (III) Directing Turnover of Archival Materials* ("**Motion for Clarification**") (Doc. No. 63). On November 9, 2026, the Court conducted a status conference on the form of this Order after disputed Orders were submitted by the Trustee and Debtor.

The Court previously entered its *Order (I) Approving Bidding Procedures and Stalking Horse Agreement, (II) Scheduling an Auction and Sale Hearing, (III) Approving the Form and Manner of Notice, and (IV) Authorizing the Sale of the Debtor's Life Story Rights and Related Intellectual Property Free and Clear of Liens, Claims, and Interests* (Doc. No. 47) (the "Bidding Procedures Order[1]"). The Court, having considered the Motion, the Objection, the *Trustee's Notice of Successful Bidder and Back-Up Bidder* (Doc. No. 52) (the "Notice of Successful Bidder"), the Motion for Clarification, the record in this case, and the argument of counsel, and being otherwise fully advised in the premises, finds that good cause exists to grant the relief set forth below.

**THE COURT HEREBY FINDS:**

A. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (N), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not otherwise defined in this Order have the meanings given to them in the Motion or the Bidding Procedures Order.

B. Notice of the Motion, the Bidding Procedures, the Bid Deadline, the Auction, the Sale Hearing, and the Sale Objection Deadline was proper, timely, adequate, and sufficient under the circumstances, complied with Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and the Bidding Procedures Order, and was served on the Debtor, all creditors, the Office of the United States Trustee, and all other parties in interest. No other or further notice is required.

C. The Trustee conducted the sale process in accordance with the Bidding Procedures Order. Before the Bid Deadline, the Trustee received a timely Qualified Bid from Doug Peters ("Peters") in the amount of $47,000.00. The Trustee conducted the Auction on October 1, 2026, by remote videoconference, at which Everlasting Films, LLC ("Everlasting" or the "Purchaser") and Peters participated as Qualified Bidders. At the conclusion of the Auction, the Trustee determined that Everlasting's[2] bid of $550,000.00 is the Successful Bid and that Peters' bid of $500,000.00 is the Back-Up Bid.

D. The Auction was conducted fairly, openly, and in good faith, and all Qualified Bidders were afforded a full and fair opportunity to bid. The Successful Bid is the highest and best offer for the Property (as defined below), the Purchase Price (as defined below) constitutes fair and reasonable consideration, and the Trustee's decision to sell the Property to the Purchaser is a sound exercise of her business judgment and is in the best interests of the Estate and its creditors.

E. The Purchase Agreement (as defined below) was negotiated, proposed, and entered into, and the Successful Bid was made, without collusion, in good faith, and at arm's length. The

[2] Everlasting's bid included financial participation from Christopher Brown pursuant to a separate agreement with Everlasting. Everlasting remains the sole Purchaser under this Order, and all Property shall vest solely in Everlasting or its permitted assignee.

Purchaser is a good-faith purchaser within the meaning of 11 U.S.C. § 363(m), and neither the Trustee nor the Purchaser engaged in any conduct that would cause or permit the sale to be avoided under 11 U.S.C. § 363(n).

F. The Property is property of the Estate under 11 U.S.C. § 541(a) to the extent of the Debtor's legal or equitable interests therein as of September 4, 2025 (the "Petition Date"), and the Trustee has full authority to sell the Property. The Motion seeks to sell only the Debtor's life story, rights, and materials as they existed through the Petition Date.

G. The Trustee is not aware of any liens on the Property. The sale of the Property free and clear of all liens, claims, encumbrances, and other interests is authorized under 11 U.S.C. § 363(f), because one or more of the standards set forth in § 363(f)(1)–(5) has been satisfied as to each such interest, and any holder of an interest that did not object, or that withdrew its objection, is deemed to have consented under § 363(f)(2). However, Trustee is investigating a potential literary contract and pending book relating to Debtor that was not disclosed to the Trustee by the Debtor. This prospective asset could be property of the Estate. To the extent the Trustee determines that such asset is the property of the Estate, it is included in the Property. The Trustee's agreement to cooperate in the recovery of any undisclosed property will terminate at the later of 1 year from the date of Debtor's discharge or two years from the date of the petition, unless otherwise ordered by the Court.

H. The Objection raises three concerns: (a) the sale of property acquired by the Debtor after the Petition Date; (b) whether the Debtor will be required to participate in, communicate with, or assist the Purchaser; and (c) the sale of the Debtor's memories, experiences, and thought processes that were not recorded or expressed before the Petition Date. The Trustee agrees that the sale is limited to prepetition property of the Estate, and the Objection is

resolved on that point as provided in this Order. The Debtor nevertheless remains obligated under 11 U.S.C. §§ 521(a)(3), 521(a)(4), and 542(a) to cooperate with the Trustee and to surrender to the Trustee property of the Estate, including the Property and the Archival Materials (each as defined below). To the extent the Objection seeks to relieve the Debtor of those obligations, the Objection is overruled.

I. Because Everlasting is the Successful Bidder, no Break-Up Fee is payable.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth in this Order.

2. The Objection is **SUSTAINED IN PART** and **OVERRULED IN PART** as set forth in this Order. All other objections to the Motion that have not been withdrawn or resolved by this Order are overruled.

3. **Approval of Sale.** Pursuant to 11 U.S.C. §§ 105(a) and 363(b), the sale of the Property to Everlasting for the sum of $550,000.00 (the “Purchase Price”) is approved, on the terms of the Life Story Agreement attached as Exhibit A to the Motion (and attached hereto as Exhibit 1), as modified by the results of the Auction and by this Order (the “Purchase Agreement”). The Trustee is authorized to execute the Purchase Agreement and any assignment or other instrument, and to take all other actions, reasonably necessary to consummate the sale and to convey the Property to the Purchaser. Paragraph 5 of the Purchase Agreement is modified to provide that the Purchase Price is $550,000.00, payable in full at closing.

4. **The Property.** As used in this Order, the “Property” means, solely to the extent of the Debtor's legal or equitable interest as of the Petition Date: (a) the Life Story and the Rights, each as defined in the Purchase Agreement; and (b) all right, title, and interest of the Debtor and the Estate as of the Petition Date in, under, or arising from any assignable book deal, contract, or other

agreement relating to the Life Story or the Rights, including all assignable rights, claims, receivables, royalties, and other interests, in each case to the fullest extent permitted by applicable law; and (c) the archival materials described in paragraph 8 of the Motion (including those in the possession of third parties), including, without limitation, the video content (upon information and belief, more than 100 hours), photographs, and memorabilia relating to the Debtor's life and career, and all footage, scripts, treatments, outlines, recordings, and other materials and rights, including those relating to the unreleased documentary or film project publicly referred to as “The Roc-A-Fella Movie” (collectively, the “Archival Materials”).

5. **Sale Limited to Prepetition Property.** Notwithstanding anything to the contrary in the Motion or the Purchase Agreement, the Property is limited to property of the Estate under 11 U.S.C. § 541 as of the Petition Date. The “Life Story Narrative Period” defined in paragraph 1 of the Purchase Agreement is modified to mean the period from the Debtor's birth through and including the Petition Date. Nothing in this Order or the Purchase Agreement sells, transfers, or encumbers: (a) any property acquired by the Debtor after the Petition Date; (b) any incidents, events, or situations occurring after the Petition Date; (c) any earnings from services performed by the Debtor after the Petition Date, as excluded by 11 U.S.C. § 541(a)(6); or (d) any work created or authored by the Debtor after the Petition Date (collectively, the “Excluded Postpetition Property”). Nothing in this paragraph limits the Purchaser’s right, following the Closing, to exercise or exploit the Property in any media now known or later developed, including by creating, producing, distributing, advertising, marketing, and exploiting productions, adaptations, derivative works, prequels, sequels, remakes, series, and other projects based upon the Property. Any such post-closing exercise or exploitation by or for the Purchaser, and the proceeds derived therefrom, shall not constitute Excluded Postpetition Property.

6. **Unrecorded Memories.** Nothing in this Order requires the Debtor to disclose, record, narrate, or otherwise communicate to the Purchaser any memories, experiences, or thoughts that were not recorded, transcribed, or otherwise expressed as of the Petition Date. The foregoing does not limit (a) the Purchaser's right to portray incidents, events, and situations occurring through the Petition Date, whether based on the Archival Materials, public records, third-party sources, or any other lawfully obtained information, without further authorization or consent from the debtor, or (b) the Debtor's turnover obligations under paragraph 7 of this Order.

7. **Turnover of Archival Materials.** Pursuant to 11 U.S.C. §§ 105(a), 521(a)(3), 521(a)(4), and 542(a), within seven (7) days after entry of this Order, the Debtor shall:

(a) deliver to the Trustee, or, at the Trustee's written direction, to the Purchaser, all Archival Materials in the Debtor's possession, custody, or control, including original physical items and all digital files in their native format with available metadata, together with any storage devices used to store the Archival Materials. To the extent Archival Materials are maintained on a mixed-use device, the Debtor shall provide a complete copy of those materials in their native format with available metadata and shall preserve the device until the Trustee confirms successful receipt;

(b) provide to the Trustee complete copies, in their native format with available metadata, of all Archival Materials maintained in digital, online, or cloud-based storage, together with any credentials or other information necessary to access and retrieve those Archival Materials, without requiring access to unrelated personal or post-petition content;

(c) to the extent any Archival Materials are in the possession, custody, or control of a third party, identify in writing to the Trustee the name and address of such third party and a description of the Archival Materials so held; and

(d) not destroy, conceal, alter, transfer, encumber, or otherwise dispose of any Archival Materials.

8. **Scope of the Debtor's Obligations.** Except for obligations expressly imposed upon the Debtor by this Order or the Bankruptcy Code, nothing in the Purchase Agreement shall impose any contractual or personal obligation upon the Debtor, including any release, covenant not to sue,

arbitration requirement, confidentiality obligation, indemnity obligation, or obligation to provide personal services, unless the Debtor separately agrees to that obligation in a writing signed by him. Nothing in this paragraph limits the binding effect of this Order upon the Debtor concerning the ownership and transfer of the Property, his turnover obligations, or his obligation not to interfere with, contest, or impair the Purchaser's ownership or exercise of the rights conveyed by this Order.

9. **Enforcement; Reservation of Rights.** If the Debtor fails to comply with paragraph 7 of this Order, the Trustee or the Purchaser may seek enforcement of this Order. Nothing in this Order limits or impairs (1) the Trustee's right to seek to avoid and recover, under chapter 5 of the Bankruptcy Code or other applicable law, any transfer of an interest of the Debtor in property that, but for such transfer, would constitute Property, including any undisclosed property that constitutes, or but for a transfer by the Debtor would constitute, Property ("Undisclosed Property"); or (2) the Purchaser's right to (a) seek recovery or turnover of Property; and (b) seek to have parties using the Property, including Undisclosed Property, cease and desist, and to enforce its rights under applicable law. The Trustee agrees to reasonably cooperate with the Purchaser in the investigation and recovery of the Property, including the Undisclosed Property, which agreement will terminate at the later of 1 year from the date of Debtor's discharge or two years from the date of the petition, unless otherwise ordered by the Court, provided, however, that the Trustee shall continue to cooperate with the Purchaser in any litigation(s) or other recovery proceeding(s) commenced during such timeframe through the full and final resolution of any such proceeding(s). Consistent with paragraph G above, any Undisclosed Property, or its value, and any proceeds thereof, recovered by the Trustee shall be included in the Property sold to the Purchaser. Nothing in this Order shall confer additional standing to the Purchaser, beyond the standing conferred to the Purchaser under the Bankruptcy Code or applicable non-bankruptcy law.

10. **Closing.** Before or simultaneously with the Closing, the Trustee shall deliver to the Purchaser all Archival Materials and related access information then in the Trustee's possession, custody, or control. The Purchaser shall pay the Purchase Price and close within ten (10) days after entry of this Order, as provided in the Bidding Procedures Order. Upon closing, all of the Estate's right, title, and interest in and to the Property shall vest in the Purchaser, and this Order shall constitute a full and effective conveyance of the Property, without the need for any further instrument. Upon receipt, the Trustee is authorized to deliver the Archival Materials to the Purchaser.

11. **Free and Clear.** Pursuant to 11 U.S.C. § 363(f), upon closing, the Property shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests, with any such interests to attach to the net sale proceeds with the same validity, priority, and extent as existed immediately before the closing.

12. **Good-Faith Purchaser.** The Purchaser is a good-faith purchaser entitled to the protections of 11 U.S.C. § 363(m). The reversal or modification on appeal of the authorization provided in this Order shall not affect the validity of the sale to the Purchaser unless such authorization and the sale were stayed pending appeal.

13. **Back-Up Bid.** The Back-Up Bid of Peters in the amount of $500,000.00 is approved as the Back-Up Bid and shall remain open and irrevocable until the earlier of (a) the closing of the sale to the Purchaser or (b) sixty (60) days after entry of this Order. If the Purchaser fails to timely close, the Trustee is authorized to close with Peters within ten (10) days thereafter, without further order of this Court, on the terms of this Order, in which event Peters shall be entitled to the protections of 11 U.S.C. § 363(m), and all references in this Order to the Purchaser shall apply to Peters.

14. **No Break-Up Fee.** Because Everlasting is the Successful Bidder, no Break-Up Fee or Expense Reimbursement is payable from the Estate.

15. **Sale Proceeds.** The Trustee shall hold the sale proceeds pending further order of this Court or distribution in accordance with the Bankruptcy Code.

16. **Binding Effect.** This Order is binding upon the Trustee, the Debtor, all creditors and parties in interest, and their respective successors and assigns, including any trustee subsequently appointed in this case.

17. **Immediate Effect.** Notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective and enforceable immediately upon entry. Entry of this Order constitutes Bankruptcy Court Approval under paragraph 9(b) of the Purchase Agreement; provided, however, that nothing in this Order shall waive or modify any condition to the Purchaser's obligation to close that exists for the Purchaser's benefit under the Purchase Agreement unless the Purchaser expressly waives that condition in writing.

18. To the extent the provisions of this Order are inconsistent with the provisions of the Motion, the Purchase Agreement, or any exhibit referenced herein, the provisions of this Order shall control.

19. The Court retains exclusive jurisdiction over all matters arising from or related to the interpretation, implementation, and enforcement of this Order, including the Debtor's turnover obligations and any dispute as to whether particular property constitutes Excluded Postpetition Property.

*Katelyn M. Vinson, Esq., is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.*

# EXHIBIT
“1”

# LIFE STORY AGREEMENT

**THIS LIFE STORY AGREEMENT** (the "Agreement"), dated this __ day of _________, 20____ (the "Effective Date"), is made (subject to Bankruptcy Court Approval, as defined below) by and between Traci K. Stevenson, in her capacity as duly-appointed Chapter 7 Trustee for the Estate of Damon Anthony Dash ("Seller"), with an address of ______________________ ______, on the one hand, and Everlasting Films, LLC (the "Buyer"), with an address of _ ____________, on the other hand. Each of Seller and Buyer shall be referred to herein as a "Party" and collectively as the "Parties."

WHEREAS, on September 4, 2025, Damon Anthony Dash ("Dash") commenced a voluntary case (the "Bankruptcy Case") under chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court");

WHEREAS, Traci K. Stevenson was appointed trustee of the chapter 7 estate of Dash and is authorized under 11 U.S.C. §§ 363, 541, and 704 to undertake to sell property of such estate, including the Life Story (as defined below) of Dash;

WHEREAS, the Seller in its business judgment believes a sale of the Life Story to be in the best interest of Dash's estate, creditors, and other stakeholders;

WHEREAS, Buyer desires to acquire the Life Story on the terms and conditions contained in this Agreement in accordance with 11 U.S.C. §§ 105 and 363 of the Bankruptcy Code subject to higher and better bids and entry of the Sale Order (as defined below) free and clear of all interests in such property to the maximum extent permitted under 11 U.S.C. § 363(f);

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth herein, it is hereby agreed between the Parties as follows:

1. ***The Life Story.*** The "Life Story," for purposes of its definition and scope, means Dash's life story together with Dash's voice, image, likeness, biography, and identifying characteristics, and the right to portray all the incidents, events, and situations of Seller's life story and all the elements thereof including, without limitation, any facts, themes, plots, characters, settings, materials, titles and stories contained therein (collectively, the "Life Story"), that have occurred at any time through the date hereof (the "Life Story Narrative Period").

2. ***Grant of Rights.*** Subject to entry of the Sale Order and upon payment of the Purchase Price by Buyer to Seller, Seller hereby sells, bargains, grants, conveys, transfers, sets over, and assigns irrevocably to Buyer, exclusively for the duration of the Exclusivity Period defined below, and in perpetuity throughout the universe, all rights, title and interest (including copyright and any extension thereof), present and future, of whatever kind or nature in any and all media now known or hereafter devised in and to the Life Story (the "Rights") for the purpose of the making of a documentary film or written work (the "Project"). The Rights will include the following exclusive rights solely in connection with the Project: (i) any and all rights of any kind, nature and description (whether or not such rights are now known, recognized or contemplated) throughout the universe, in and to the Life Story and in and to the copyright therein, and all renewals and extensions of copyright;

(ii) Project-based audio visual rights, audio rights, prequel, sequel, remake, derivative, and series rights, theatrical and non-theatrical rights, musical and stage rights, public performing rights, music publishing, merchandising rights, interactive media rights, on-line programming rights, mechanical reproduction and distribution rights, recording and reproduction rights, publication rights, radio rights, standard and non-standard television and other broadcasting and transmitting rights, and any so-called "Rental and Lending Rights" pursuant to any European Union ("EU") directives and/or enabling or implementing legislation, laws or regulations enacted by the member nations of the EU, in and to the Life Story; and (iii) any and all so-called "new media" and all other rights now known or hereafter devised, including without limitation all so-called "allied" and "ancillary" rights, in perpetuity, in any and all media and languages in and to the Project. For clarity, nothing contained herein shall prevent Seller from entering into another agreement with regard to Seller's Life Story and all rights thereto with another party after the earlier of five (5) years after the commercial release of the Project or fifty (50) years after the Effective Date (the "Exclusivity Period"), on which earlier date the exclusivity given above shall terminate.

3. ***Litigation***. Buyer is advised and informed that Dash has been a party in various lawsuits (as both a plaintiff and a defendant) and in the future may be a party in additional lawsuits. To the extent any future litigation relates to matters that occurred during the Life Story Narrative Period, the parties agree that such matters are Life Story material governed by this Agreement.

4. ***Best Efforts and Good Faith***. Buyer represents and warrants that it intends in good faith to explore and give genuine consideration to developing the Project for actual release, and Buyer will use its commercially reasonable best efforts to do so. Without limiting the foregoing, Buyer affirms, represents and warrants that this Agreement is not intended to be, nor does Buyer have any direct or indirect intentions, of purchasing the Life Story to sequester it from public attention or otherwise to function as a "catch-and-kill" to prevent the further disclosure of events comprising the Life Story.

5. ***The Purchase Price.*** The "Purchase Price" shall be an amount equal to Thirty-Seven Thousand Dollars ($37,000.00) (the "Purchase Price") which shall be payable upon full execution of this Agreement.

6. ***Warranties and Representations***. Seller hereby represents and warrants that Seller has full right and power to make and perform this Agreement and to sell, assign, and convey all Dash's rights in and to the Life Story.

7. ***Release***. Seller understands that any exploitation of the Rights may contain dialogue, incidents, characters or written or visual material that may or may not be based on or suggested by actual events in the Life Story and Seller agrees that non-disparaging dramatic license may be taken in connection with the Life Story. Seller agrees that Buyer may dramatize the Life Story and add to, subtract from and change characters, incidents, situations and events constituting the Life Story for purposes of non-disparaging dramatization. Seller acknowledges and agrees that Seller and Dash will not in the future bring, institute or assert any claim, demand or action against Buyer or its affiliates and

successor and assigns, on the grounds that any exercise of the Rights or any other rights granted hereunder violates Seller's right of privacy, publicity and/or similar rights; and Seller and Dash hereby forever release Buyer and its affiliates and successor and assigns from any and all claims, demands or causes of action that Seller may now have or may hereafter have for invasion of privacy or right of publicity, infringement of copyright or violation of any other right arising out of or relating to this Agreement, the Life Story or the Rights or based upon any failure or omission to make use of the Life Rights or the Rights.

8. ***Assignments.*** Buyer may assign this Agreement (including, without limitation, any or all of its rights and obligations hereunder) to any person or entity, which thereupon assumes and becomes jointly and severally obligated to Seller with regard to all liabilities, duties and obligations hereunder (including, without limitation, the Best Efforts and Good Faith obligations of ¶ 4).

9. ***Bankruptcy Matters.***

   a. Buyer and Seller each acknowledge and agree that this Agreement and the transactions contemplated herein are subject to Seller's right and ability to consider higher and better competing bids for the Life Story. To the extent any such competing bids are received by the Seller, Seller shall conduct an auction of the Life Story to determine the highest or best bid for the Life Story. Seller shall be deemed a qualified bidder to participate in any such auction.

   b. Buyer and Seller each acknowledge and agree that this Agreement and the transactions contemplated herein are subject in all respects to the entry of a final non-appealable order (the "Sale Order") in form and substance reasonably acceptable to Buyer ("Bankruptcy Court Approval"). The Sale Order shall provide, among other things, that (i) this Agreement is valid and enforceable; (ii) this Agreement and the transactions and agreements contemplated herein are approved and the Seller is authorized and directed to consummate all such transactions and agreements; (iii) upon the closing and consummation of the transactions described in this Agreement, the Life Story shall be sold to Buyer free and clear of all liens, claims, encumbrances, and other interests to the maximum extent permitted under 11 U.S.C. § 363.

   c. Further, if an auction is conducted and Buyer is not the winning bidder for the Life Story because Seller selects another bid as the highest or best offer (such winning bidder, the "Successful Bidder"), Buyer understands that, in accordance with and subject to any bidding procedures order, it shall be required to serve as the back-up bidder if Buyer is the next highest or otherwise next best bidder for the Life Story at the auction (the party that is the next highest or otherwise next best bidder at the auction after the Successful Bidder, the "Back-Up Bidder"). If Buyer is the Back-Up Bidder, Buyer shall be required to keep its bid to purchase the Life Story on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer in the auction) open and irrevocable until sixty (60) days following the selection of the Successful Bidder. Following the auction, if the Successful

Bidder fails to consummate the Successful Bidder's bid for any reason whatsoever, then Buyer, if Buyer is still the Back-Up Bidder, will be deemed to have the new prevailing bid, and Seller may seek authority to consummate this Agreement on the terms and conditions set forth herein (as the same may be improved upon by Buyer in the auction) with Buyer as the Back-Up Bidder.

d. In consideration for Buyer having expended time and expense in connection with this Agreement, the negotiation of this Agreement and the identification and quantification of the assets to be sold under this Agreement, upon the consummation of any transfer of the Life Story to any entity other than Buyer (an "Alternative Transaction"), Buyer shall be entitled to payment of the sum of $3,700.00 as expense reimbursement (the "Expense Reimbursement"), which shall be paid in cash, by wire transfer of immediately available funds solely from the proceeds of such Alternative Transaction to an account designated in writing by Buyer to Seller. The obligation to pay the Expense Reimbursement shall survive the termination of this Agreement; *provided*, *however*, that Buyer shall not be entitled to receive the Expense Reimbursement if Buyer has breached or defaulted under this Agreement and such breach or default is not cured as permitted under this Agreement. The Parties acknowledge and agree that payment of the Expense Reimbursement is an integral part of this Agreement and, in the absence of Seller's agreement to pay the Expense Reimbursement on the terms set forth herein, Buyer would not have entered into this Agreement. Upon the consummation of any Alternative Transaction, Seller will pay the Expense Reimbursement as provided for herein, and the Parties shall be released from all further obligations hereunder.

10. ***Remedies.*** Seller acknowledges and agrees that, except as may be authorized by the Bankruptcy Court in an order approving an Alternative Transaction, in no event shall Seller terminate or rescind this Agreement or seek or be entitled to enjoin or restrain the Rights and the development, production, exhibition, distribution, advertising, marketing or other exploitation of any projects or productions based on the Life Story. Seller hereby acknowledges and agrees that in the event of a breach or threatened breach of this Agreement or any part hereof by Seller, in addition to any other damages Buyer is entitled to in connection with such breach, Buyer shall be entitled to seek injunctive and other equitable relief against Seller and/or Dash to end or prevent such breach and to secure enforcement of this Agreement through a court order or through the arbitration process outlined below, provided, that, for the avoidance of doubt, any resort to such equitable relief shall not be construed as a waiver of any other rights or remedies which Buyer may have for damages or otherwise.

11. ***Confidentiality.*** Subject to ¶¶ 2 and 3 above and except as necessary to obtain entry of the Sale Order, Seller acknowledges and agrees that Seller will not divulge any elements of the Life Story or any project based on the Life Story to any third party.

12. ***Termination.*** This Agreement may be terminated at any time prior to closing by written notice to the applicable Party as follows:

a. by mutual written agreement of Buyer and Seller;

b. by either Buyer or Seller if the Agreement is disapproved by the Bankruptcy Court;

c. by either Buyer or Seller if, prior to closing, the Sale Order, after being entered by the Bankruptcy Court, is subsequently reversed, revoked, or voided by an order of a court of competent jurisdiction;

d. by Buyer upon consummation of an Alternative Transaction, including following an auction if Buyer is not the Successful Bidder or the Back-Up Bidder; or sixty (60) days have expired since Buyer was named the Back-Up Bidder; provided, in each case, that Buyer has not breached or defaulted under this Agreement and such breach or default is not cured as permitted under this Agreement;

e. by Buyer if the Bankruptcy Court enters an Order dismissing the Bankruptcy Case.

If this Agreement is terminated, each of the Parties shall bear its own costs incurred in connection with the transactions contemplated by this Agreement; provided that Buyer shall be entitled to the Expense Reimbursement solely upon the consummation of an Alternative Transaction, as expressly provided herein.

13. ***Governing Law / Arbitration.*** The Bankruptcy Court shall have exclusive jurisdiction over any dispute or matter arising out of or relating to the bidding procedures and sale process contemplated herein, through the ultimate closing and consummation of the sale transaction described in this Agreement, to the fullest extent permitted by law. This Agreement shall be interpreted in accordance with the laws of the State of New York, applicable to agreements executed and to be wholly performed therein. Except with respect to injunctive or equitable relief being sought by Buyer through a court order pursuant to Paragraph 7 above, the Parties and Dash shall submit all post-closing questions, disputes, controversies or claims between them to binding arbitration. BUYER AND SELLER WAIVE THEIR RIGHTS TO A COURT OR JURY TRIAL. This agreement to arbitrate applies to, but is not limited to, all disputes regarding the construction or application of this Agreement, all claims arising under federal, state, or local statutory or common law, including: claims of breach of promise(s), breach of contract or breach of the covenant of good faith and fair dealing, tort claims, and any other claims of illegality or breach of any right which Buyer or Seller or Dash might hold with respect to the other whether under this Agreement or otherwise. The arbitration shall be administered by JAMS in accordance with its rules and procedures. The arbitration shall take place in New York, NY before a single neutral arbitrator from the panel of JAMS. The arbitrator shall be a retired state or federal judge or an attorney with at least ten (10) years of entertainment experience. The Rules of Evidence, including the rules relating to hearsay, will apply to the arbitration. The parties shall have the right to take depositions and to conduct all other discovery available in civil actions. The arbitrator shall issue a written decision and award including the essential findings and conclusions on which the award is based. The opinion and award will decide all issues submitted and shall be final and binding to the fullest extent permitted by law and will be enforceable by any court having jurisdiction. To the extent allowed by New York law, the arbitrator shall be required to follow all applicable substantive law. The arbitrator shall grant any legally meritorious motion to dismiss or motion for summary judgment presented by any party. It is understood and agreed that the prevailing party in

such arbitration and/or confirmation proceeding shall be entitled to recover its reasonable outside attorney's fees and expenses. Except as otherwise limited or prohibited by this Agreement, the arbitrator shall be permitted to award those remedies, including, without limitation, attorney's fees, in law or equity, which are requested by the parties and which the arbitrator determines to be supported by credible and relevant evidence presented. The party who prevails in any arbitration may seek to have the arbitrator's award confirmed as a judgment of the New York County Supreme Court in New York, NY and/or the United States District Court for the Southern District of New York or other court of competent jurisdiction. The JAMS arbitration may be subject to the JAMS appeals procedure.

14. ***Miscellaneous.*** This Agreement constitutes the entire understanding of the Parties and may not be altered, amended, modified, or canceled except by a written agreement signed by both Parties. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute one and the same instrument, respectively. Executed copies of the signature pages of this Agreement may be transmitted electronically in either TIFF or PDF format and shall be treated as originals, fully binding and with full legal force and effect, and the Parties waive any rights they may have to object to such treatment. All approvals hereunder shall be in writing (email to suffice).

**IN WITNESS HEREOF**, the Parties hereto have set their hand as of the date first herein set forth.

**AGREED TO AND ACCEPTED BY:**

**Everlasting Films, LLC**

By: ____________________________

Name:__________________________

Title:___________________________

**Traci K. Stevenson, as Chapter 7 Trustee of the Estate of Damon Anthony Dash**

By: ____________________________

Name:__________________________

Title:___________________________